QUADRA & COLL, LLP
James A. Quadra (SBN 131084)
jquadra@quadracoll.com
Rebecca M. Coll (SBN 184468)
rcoll@quadracoll.com
649 Mission St Fl 5
San Francisco, California 94105
Telephone:     (415) 426-3502
Facsimile:     (415) 795-4500

*Attorneys for Plaintiffs Frederick Schulz, Brandon Warren
And Matthew Warren, on Behalf of
Themselves and Those Similarly Situated*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK SCHULZ, BRANDON WARREN AND MATTHEW WARREN on behalf of himself and all those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DHL EXPRESS (USA), INC., Defendant. <br><br> Defendant. | Case No. 3:20-cv-04490-RS <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date:   February 3, 2022 <br> Hearing Time:   1:30 p.m. <br> Courtroom:      3, SF Courthouse, 17th Flr. <br> Judge:          Hon. Richard Seeborg |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 2

FACTS ................................................................................................................ 2

ARGUMENT ....................................................................................................... 4

I.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
SETTLEMENT PURPOSES WITH PLAINTIFFS' COUNSEL APPOINTED AS CLASS
COUNSEL. ......................................................................................................... 4

    A.    The Proposed Settlement Class Meets the Requirements of Rule 23(a) ............... 4

    B.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) .......... 7

    C.    Plaintiffs' Counsel Meet the Requirements of Rule 23(g). ................................. 8

II.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
SETTLEMENT .................................................................................................. 10

    A.    The Settlement Is The Product Of Serious, Informed, Non-Collusive
Negotiations. .................................................................................................... 10

    B.    The Settlement Has No Obvious Deficiencies, Does Not Grant Preferential
Treatment to Class Representatives or Segments of the Class, and Falls Within the
Range of Possible Approval. .............................................................................. 11

III.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE TO THE CLASS. 16

IV.  THE COURT SHOULD SET A FINAL FAIRNESS HEARING DATE FOR
JUNE 30, 2022. ................................................................................................ 18

CONCLUSION .................................................................................................. 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alberto v. GMRI, Inc.,* 252 F.R.D. 652 (E.D.Cal.2008) ............................................ 9

*All Plaintiffs v. All Defendants*, 645 F.3d 329 (5th Cir. 2011) ................................. 14

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ..................................................... 3

*Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975)...................................................... 7

*Collins v. Cargill Meat Solutions Corp.,* 2011 WL 837140 (E.D.Cal. Mar.9, 2011) 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................ 4

*Harris v. Vector Marketing Corp.*, No. C-08-5198, 2011 WL 1627973 (N.D. Cal. April 29, 2011)................................................................................................. 9

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) ................................................................................................................. 12

*In re Microsoft I-V Cases*, 135 Cal.App.4th 706 (2006) ......................................... 14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ............................................................................ 4

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .. 12

*Sullivan v. Kelly Servs.*, 268 F.R.D. 356 (N.D. Cal. 2010)........................................ 6

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 ..................................................... 5

**Statutes**

Fed. R. Civ. P. 23 ....................................................................................... 3, 4, 6, 16

**Treatises**

Conte & Newberg on Class Actions, Fourth Edition........................................... 5, 9

Manual for Complex Litigation (Fourth)............................................................. 3, 9

1    <u>**NOTICE OF MOTION AND MOTION**</u>

2        PLEASE TAKE NOTICE that on February 3, 2022, at 1:30 p.m. before the

3    Honorable Richard Seeborg, United States District Court - San Francisco Courthouse,

4    Courtroom 3, via Zoom at https://cand-

5    uscourts.zoomgov.com/j/1606595725?pwd=OExjRVA5N01TQjRSRDZNM25PSThjUT09

6    Webinar ID: 160 659 5725, Password: 466459, Plaintiffs FREDERICK SCHULZ,

7    BRANDON WARREN and MATTHEW WARREN will and hereby do move for an order

8    granting preliminary approval of the parties' proposed class settlement, conditionally

9    certifying a settlement class, appointing Plaintiffs as class representatives and their attorneys

10   as class counsel, directing dissemination of the proposed class notice, and setting a fairness

11   hearing to determine whether the settlement should be granted final approval.

12       Plaintiffs' motion is based on this Notice, the accompanying Memorandum of Points

13   and Authorities, Declaration of Rebecca Coll and all the exhibits thereto, Declaration of

14   James A. Quadra, Declaration of Frederick Schulz, and the Proposed Order Granting

15   Preliminary Approval of Class Settlement.

16

17   Dated:  December 30, 2021                    Respectfully submitted,

18                                               QUADRA & COLL, LLP

19

20                                     By:        */s/ Rebecca Coll*
                                                 Rebecca Coll

21

22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**INTRODUCTION**

3

    This is a meal and rest break class action brought on behalf of current and former

4

employees designated as "Casual Employees" at Defendant DHL Express (USA), Inc.

5

("DHL" or "Defendant").  Plaintiffs Frederick Schulz, Brandon Warren, and Matthew

6

Warren have brought this class action, on behalf of themselves and putative class members,

7

based on alleged violations of the California Labor Code.  After exchanging discovery and an

8

arm's length mediation before Tripper Ortman, the parties were able to reach a settlement

9

stipulation.  (Coll Decl. ¶2, Exh. 1.)  Plaintiffs herein move for preliminary approval of the

10

settlement reflected in that stipulation.

11

**FACTS**

12

    On April 10, 2020, Plaintiff Schulz filed this case on behalf of himself and other

13

similarly situated "Casual Employees" who worked as couriers of DHL in the State of

14

California from April 10, 2016 through the present.  (See Dkt. 1-main, p. 15 of 39

15

[Complaint], ¶3.)  Defendant removed the action to federal court, based on the Class Action

16

Fairness Act.  (*See* Notice of Removal filed July 7, 2020, Dkt. No. 1.)

17

    On October 8, 2020, the parties filed a Joint Case Management Conference statement.

18

(Dkt. No. 17.)

19

    On October 9, 2020, Plaintiff Schulz served his initial disclosures.  (Coll Decl. ¶4.)

20

    On November 19, 2020, Plaintiff Schulz filed a Motion to file an Amended

21

Complaint to add two named plaintiffs.  (Dkt. No. 21.)

22

    On December 8, 2020, the parties filed a stipulation and proposed order for Plaintiff

23

to file the Amended Complaint, which was granted the same day.  (Dkt. Nos. 23-25.)

24

Plaintiffs filed the First Amended Complaint.  (Dkt. No. 26.)

25

    On January 26, 2021, the parties filed a stipulation and proposed order to stay this

26

litigation to engage in informal discovery and mediation.  (Dkt. No. 29.)

27

    On January 27, 2021, the Court granted the parties' request and set a Case

28

Management Conference for August 19, 2021.  (Dkt. No. 30.)

1   Thereafter, Plaintiffs requested extensive discovery from Defendant, which

2   Defendant provided voluntarily, including obtaining wage records and information that

3   would demonstrate the facts necessary to show that class members had not received required

4   breaks, as well as information relevant to calculating penalties allegedly owed to the class

5   members.  (Coll Decl. ¶9.)  Defendant produced documents reflecting the class members'

6   hours worked, payroll records, and break records.  (*Id*.)  Counsel for Plaintiffs analyzed the

7   data thoroughly and retained an expert to provide consultation regarding the calculation of

8   wages and penalties owed.  (*Id*.)  After analyzing the initial data provided by Defendant,

9   Plaintiffs followed up with additional demands for further information, which Defendant

10  provided after meet and confer efforts.  (*Id*.)  In addition, Defendant provided spreadsheets

11  reflecting the dates of separation of all former employees.  (*Id*.)  Plaintiffs did not proceed to

12  mediation until all relevant information had been produced.  (*Id*.)

13  On August 3, 2021, the parties engaged in an all-day mediation with mediator Tripper

14  Ortman.  (Coll Decl. ¶12.)  After a lengthy session that lasted into the evening, the parties

15  were able to reach a settlement subject to the Court's approval.  Over the course of the next

16  several months, the parties engaged in back-and-forth negotiations regarding the terms of the

17  settlement, until an agreement was finally signed in December 2021.  (*Id*., Exh. 1.)

18  The settlement agreement, which is discussed in detail in Section II(B), *infra*,

19  provides for payment in the amount of $1,200,000 to a class of approximately 696

20  individuals, an average recovery of $1,724 per class member, prior to reduction for attorneys'

21  fees and enhancement payments ($1,200,000 / 696 = $1,724), or approximately $1,279 per

22  class member, after such reductions if the Court approves the requested attorneys' fees and

23  costs and enhancement payments discussed in Section IIB below ($890,000 / 696 = $1,279).

24  (Coll Decl. ¶10.)  Defendant will also pay for class notice and claims administration

25  procedures separate and apart from the recovery of the Class.  (Exh. 1, ¶1.13; ¶7.)  No class

26  member will be required to make a claim, but instead will receive checks in the mail without

27

28

3

being required to take any action, after receiving proper Class Notice via mail and an opportunity to opt out.  (Exh. 1, ¶10.3, ¶8.7.)

Plaintiff now seeks preliminary approval of the proposed settlement for the reasons set forth below.

**ARGUMENT**

A class action settlement must be approved by the Court to be effective. *See* Fed. R. Civ. P. 23(e).  There are three steps to the process of obtaining approval of the settlement: (1) A preliminary approval hearing, at which the court considers whether the proposed settlement class provisionally meets the requirements of Rule 23, and whether the proposed settlement is within the range of reasonableness possibly meriting final approval, (2) Notice of the proposed settlement to the Class, together with notice of a fairness hearing, and (3) A final fairness hearing, wherein the Court decides whether the proposed settlement is fair, reasonable, and adequate.  *See* Manual for Complex Litigation (Fourth) §§ 21.632-34.

Plaintiff herein requests that the Court to take the first step in the settlement approval process by certifying a settlement class, granting preliminary approval of the settlement, approving notice to the Class and setting a final fairness hearing date.

**I.      THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES WITH PLAINTIFFS' COUNSEL APPOINTED AS CLASS COUNSEL.**

Prior to granting preliminary approval of the settlement, the Court should determine whether the proposed settlement class provisionally meets the requirements of Rule 23(a), and either Rule 23(b)(1), (2), or (3).  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 619-20 (1997); *see also* Manual for Complex Litigation §§ 21.632.   In this case, the proposed class meets all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

**A.      The Proposed Settlement Class Meets the Requirements of Rule 23(a)**

Rule 23(a) provides that a court should certify a class where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

4

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed.R.Civ.P. 23(a).  For purposes of approval of the settlement[1], each element is satisfied here.

First, the proposed class is numerous.  "The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

As set forth above, proposed class is defined as all persons classified as 'casual employees' who worked as couriers for DHL Express (USA), Inc. in the State of California from April 10, 2016 through the date of preliminary approval of this settlement.   (Settlement Stipulation, ¶¶ 1.3, 1.5.)

Defendant has produced data to Plaintiff which reflects that the number of employees falling within the foregoing class definition is approximately 696.  (Coll Decl. ¶10.)  Joinder of all members of the class is therefore impracticable.

Second, there are questions of law or fact common to the class.  When determining predominance, courts determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (reversing denial of class certification) (citation and internal quotation marks omitted).  The focus is on "the relationship between the common and individual issues." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1022.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Las Vegas Sands*, 244 F.3d at 1162, n.23.

The predominance requirement is not a "numerical test that identifies every issue in the suit as suitable for either common or individual treatment and determines whether

---

[1] In the absence of settlement, Defendant was prepared to argue that this matter was not appropriate for class certification.

common questions predominate by examining the resulting balance on the scale."  Conte & Newberg on Class Actions, Fourth Edition, §4:25.  "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions."  *Id.; see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (recognizing that "commonality only requires a single significant question of law or fact").

Here, there are overriding common questions of fact as to (a) whether Defendant routinely and as a matter of policy created work conditions that made it extremely difficult for Class Members to take meal and rest breaks, and (b) whether Defendant automatically deducted time for meal breaks that were not actually taken, resulting in loss of earned wages. There are also overriding common questions of law as to whether such policies and work conditions violated California Labor Code sections 226.7 and 512 relating to meal and rest breaks, and California Labor Code sections 510, 1194 and 1198 relating to wage payments and overtime.  Therefore, there are questions of fact and law common to the class.

Third, the claims of Plaintiffs Frederick Schulz, Brandon Warren, and Matthew Warren are typical of the claims of the Class.  Plaintiff Frederic Schulz was employed by Defendant as a "casual employee" in the capacity of a courier from June 8, 2017 until May 2018, when he was promoted to the seniority list.  (FAC, ¶¶2, 9.)  Plaintiff Brandon Warren was employed by Defendant as a "casual employee" in the capacity of a courier from October 2016 until March 2018, when he informed Defendant he would no longer be working at DHL.  (FAC, ¶¶3, 10.)  Plaintiff Matthew Warren was employed by Defendant as a "casual employee" in the capacity of a courier from June 2017 until February 2018, when he asserts Defendant stopped calling him to come in for shifts.  (FAC, ¶¶4, 11.)  Thus, one named class representative remained employed as a courier until he was promoted, one remained employed as a casual employee until he quit, and one remained employed as a causal employee until he asserts that he was essentially terminated.  All three named Plaintiffs allege they were required to work through their lunch periods and rest breaks to

1   complete the work that Defendant required them to complete during their shifts.  (FAC, ¶12.)

2   Therefore, the named Plaintiffs' claims are typical of those of the Class.

3         Fourth, Plaintiffs have fairly and adequately protected the interests of the Class, and

4   have no interests antagonistic to or in conflict with those of Class members.  (*See* Coll Decl.

5   ¶13.)  Plaintiff has also retained competent counsel as set forth in Section I(C), *infra*.  (*See*

6   *generally* Coll Declaration, Quadra Declaration.)

7         Finally, in addition to the explicit Rule 23(a) requirements, there is an implicit

8   requirement that a class must be ascertainable.  "An adequate class definition specifies 'a

9   distinct group of plaintiffs whose members [can] be identified with particularity.'" *Sullivan v.*

10  *Kelly Servs*., 268 F.R.D. 356, 362 (N.D. Cal. 2010) (citations omitted).  Here, the class is

11  ascertainable from Defendant's own payroll records, which identify "casual employees" with

12  specificity.  (See Coll Decl., ¶10.)  Therefore, the Class is ascertainable.

13        In short, this action meets the requirements of Rule 23(a) for certification of a

14  settlement class.

15      **B.**      **The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

16       "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking

17  class certification must also show that the action is maintainable under Fed. R. Civ. P.

18  23(b)(1), (2), or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed class is maintainable

19  under Rule 23(b)(3) because common questions predominate over any questions affecting

20  only individual members, and class resolution is superior to other available methods for a fair

21  resolution of the controversy.  *See id*. at 1022-23 (citing Fed. R. Civ. P. 23(b)(3)).

22        In this case, common questions predominate over any questions involving only

23  individual members.  Whether Defendant had a policy and practice of creating work

24  conditions that made it extremely difficult for Class Members to take meal and rest breaks,

25  and whether Defendant automatically deducted time for meal breaks that were not actually

26  taken, resulting in loss of earned wages, are the central questions.  Questions of fact relating

27  to what Defendant's policies were relating to meal and rest breaks, coupled with questions of

28  law as to the legality of such policies, are all common to the Class.  In contrast, there are no

individualized questions of law, and the only individualized factual issues are the amounts owed in penalties to individual class members—which cannot defeat certification.  *See Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir. 1975)(citations omitted).

Finally, class resolution is superior to other available methods for a fair resolution of this controversy.  To require each individual class member to separately bring an action would drain the resources of courthouses.  Moreover, it would be difficult for many class members to locate counsel willing to litigate individualized claims.  Class resolution is a favorable approach for members of the Class, and is appropriate in this case.

**C.     Plaintiffs' Counsel Meet the Requirements of Rule 23(g).**

In connection with any order certifying a class, Rule 23(g) requires that the Court formally appoint class counsel. In this case, Plaintiff's counsel are well qualified to be appointed as class counsel in this matter.  James Quadra and Rebecca Coll, the named partners at Quadra & Coll, LLP, are experienced class counsel.  They have served as class counsel in multiple employment class actions, as well as other class actions.  (Quadra Decl. -¶¶11-13; Coll Decl. ¶¶16-20.)

Quadra & Coll is recognized as a national Tier 1 firm in US News & World Report's "Best Law Firms" list for mass torts and class actions.  (Coll Decl. ¶15.)

Mr. Quadra graduated from U.C. Berkeley's Boalt Hall School of Law in 1987, where he was a National Hispanic Scholarship Fund recipient.  (Quadra Decl. ¶5.)  He has spent almost 35 years litigating cases in state and federal courts.  (*Id.*)

In the 1990s, Mr. Quadra was Chief of General Litigation at the San Francisco City Attorney's office, supervising approximately 30 deputy city attorneys involved in a range of litigation on behalf of San Francisco. (Quadra Decl. ¶4.)  While at the San Francisco City Attorney's Office, he was the lead deputy is several class actions matters filed against San Francisco.  (*Id.*)

Since first forming his own firm, Mr. Quadra has successfully litigated class actions through trial, including a wage class action.  (Quadra Decl. ¶12.)   He has acted as class counsel in multiple class actions and has also litigated many complex actions through

completion, as well as wage and hour individual lawsuits.  He has handled cases that have drawn national attention.  He has been interviewed by and quoted in the National Law Journal, The Recorder, the SF Chronicle, the Washington Post and the New York Post, among other publications. (Id.)   He has appeared on Larry King Live, On the Record with Greta Van Susteren, The Glenn Beck Program, KGO-7 News (ABC) and KDTV-14 News (Univision).  (Id.)

Peer organizations and independent reviewers have recognized Mr. Quadra's achievements.  (Quadra Decl. ¶6.)   Since 2012, Mr. Quadra has been selected to be included in The Best Lawyers in America - 19th Edition.  (Id.)  Martindale-Hubbell recognizes Mr. Quadra as an AV Preeminent rated attorney.  (Id.)  An AV rating identifies Mr. Quadra as an attorney with very high to preeminent legal ability and the highest ethical standards.  He has been named a Northern California Super Lawyer as published in San Francisco Magazine and Northern California Super Lawyer Magazine every year since 2005.  (Id.)  Super Lawyers is a listing of the top 5% of attorneys in Northern California as chosen by their peers.  (Id.)  Avvo, an online service that rates legal professionals, has rated Mr. Quadra as "Superb," its highest rating.  (Id.)

Rebecca Coll is an experienced trial lawyer licensed to practice in the State of California, the State of New York, and the District of Columbia.  (Coll Decl. ¶14.)  As a Deputy City Attorney at the San Francisco City Attorney's Office, Ms. Coll played an active role in San Francisco's groundbreaking litigation against the tobacco industry in the 1990's. (Id. ¶16.)  Since that time she has handled numerous multi-million dollar class actions involving wage and hour disputes and consumer products, both as class counsel and in some cases as defense counsel.  (Id.; see also ¶¶19, 20.)  She also has more than two decades of experience litigating complex actions in state and federal courts, as well as individual employment disputes both for individuals and for companies.  (Id., ¶15.)  She has litigated many civil cases through trial in both state and federal courts.  (Id.)

Ms. Coll has earned industry recognition for excellence in her profession.  (Coll Decl., ¶18.)  In 2014, she was featured in San Francisco's Women Leaders in the Law's list

1   of the area's top female attorneys.  (*Id*.)  She has been named as a Northern California "Super

2   Lawyer" and has appeared in The Best Lawyers in America for many years.  (*Id*.)  She has

3   also received the San Francisco Bar Association award for "Outstanding Volunteer in Public

4   Service."  (*Id*.)  She is rated as AV Preeminent by Martindale-Hubbell.  (*Id*.)  Avvo, an

5   online attorney rating website, has rated her as "Superb," its highest rating.  (Id.) She is also a

6   member of the Multi-Million Dollar Advocates Forum, which is limited to attorneys who

7   have secured multi-million dollar awards.  (*Id*.)

8       Thus, Plaintiff's counsel are experienced attorneys and should be appointed as class

9   counsel.

10  ## II.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
11  SETTLEMENT.

12      The Court will determine at the final approval stage whether the parties' proposed

13  settlement is fair, reasonable and adequate.  At this preliminary approval stage, however, the

14  Court determines only whether the proposed settlement "(1) appears to be the product of

15  serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not

16  improperly grant preferential treatment to class representatives or segments of the class; and

17  (4) falls within the range of possible approval."  *Harris v. Vector Marketing Corp.*, No. C-08-

18  5198, 2011 WL 1627973, at *7 (N.D. Cal. April 29, 2011) (granting preliminary approval of

19  settlement in wage and hour class action); *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 666 (E.D.

20  Cal. 2008); *Collins v. Cargill Meat Solutions Corp.,* 2011 WL 837140, at *6 (E.D. Cal. Mar.

21  9, 2011) (granting preliminary approval of settlement in wage and hour class action); *see also*

22  Conte & Newberg on Class Actions § 11.25 (4th ed. 2002); Manual for Complex Litigation

23  (Fourth) §§ 21.632 (2004).  In this case, each element is met.

24      ### A.   The Settlement Is The Product Of Serious, Informed, Non-Collusive
25  Negotiations.

26      The proposed settlement in this matter was reached after months of hard-fought

27  negotiations.  On August 3, 2021, the parties engaged in an all-day mediation with mediator

28

Tripper Ortman.  (Coll Decl. ¶12.)  After a lengthy session that lasted into the evening, the parties were able to reach a settlement subject to the Court's approval.  (*Id*.)  Over the course of the next several months, the parties engaged in back-and-forth negotiations regarding the terms of the settlement, until an agreement was finally signed in December 2021.  (*Id*., Exh. 1.)  Mediation did not occur until after Defendant provided documentary evidence relating to both liability and sufficient evidence to establish Defendant's financial exposure in this case. (*Id*., ¶9.)  Defendant produced documents reflecting the class members' hours worked and breaks taken, including payroll records.  (*Id*.)  Counsel for Plaintiff thoroughly analyzed the data and followed up with Defendant regarding missing information until Defendant satisfied counsel for plaintiff that relevant and accurate information had been produced.  (*Id*.)

In short, the settlement was reached based on objective and verified information, and is the product of non-collusive and hard-fought negotiations.

**B.     The Settlement Has No Obvious Deficiencies, Does Not Grant Preferential Treatment to Class Representatives or Segments of the Class, and Falls Within the Range of Possible Approval.**

The settlement fairly compensates the members the Class, and has no obvious deficiencies.  All members of the Class will receive the same notice, and will receive payments based on the same calculations of pro rata shares, as set forth below. The settlement is within the range of possible approval.

1.   Settlement Fund Payment

The total settlement fund payment under the proposed settlement is $1,200,000.00 ("Gross Settlement Amount"). The Gross Settlement Amount does not include the costs of the Settlement Administrator. The Settlement Administrator costs are to be borne separately by Defendant *in addition to* the Gross Settlement Amount.  (Exh. 1, ¶7.)

Counsel for Plaintiffs have reviewed the wage and hour records of Defendant, and have concluded that the approximate amount of wages and penalties that could be deemed to be owed to the class members is approximately $3,750,000.  (Coll Dec. ¶11.)  However,

1    counsel for Plaintiffs have concluded that there is a significant risk of reduction in penalties

2    awarded, or outright loss at trial.

3          Plaintiff's counsel evaluated the risks at issue in this case and concluded that the

4    proposed settlement is appropriate for three primary reasons.

5          First, Defendant has indicated an intent to defend this action based on Labor Code

6    section 512(e), which states that the penalties for missed meal breaks do not apply to

7    employees covered by a collective bargaining agreement, where the collective bargaining

8    agreement provides for meal periods and provides for binding arbitration.  (*See* CMC

9    Statement, docket no. 17, p. 5:10-11.)  Defendant asserts that each member of the putative

10   class is subject to a collective bargaining agreement.

11         Second, Defendant has asserted a claim that preemption afforded under the National

12   Labor Relations Act and/or Labor Management Relations Act applies.  (*See id.*, p. 5:12-13.)

13   In the opinion of Plaintiff's counsel, these defense claims are adequate to warrant a serious

14   discount in the full amount allegedly due to the proposed Class.  (Coll Decl. ¶11.)

15         Third, Defendant has contested Plaintiffs' claims that there was a statewide policy of

16   forcing casual workers to skip meal and rest breaks, and focused on the fact that Plaintiffs

17   never filed grievances, and on the fact that three Plaintiffs cannot establish a statewide policy

18   that is neither written nor adequately documented.  Defendant asserts that couriers had ample

19   opportunity to take breaks and did indeed take breaks, but did not routinely record breaks,

20   making proof of a classwide practice difficult to establish.  Based on these difficulties in

21   proof, in Plaintiffs' counsel's judgment, the proposed settlement is fair to the Class.

22         2.   Attorneys' Fees

23         Defendant has agreed that it will not oppose an application by Class Counsel for an

24   award of attorneys' fees up to 25% of the Gross Settlement Amount, to be paid from the

25   Gross Settlement Amount.

26          Plaintiff's Counsel will make a motion for attorneys' fees in advance of the hearing

27   date for final approval of this settlement, to be heard concurrently with the final approval

28   motion.  At that time, Plaintiff's Counsel will submit evidence in support of their motion for

1  fees.  Preliminarily, it should be noted that where a settlement produces a common fund for

2  the benefit of the entire class, either the percentage-of-recovery method or the lodestar plus

3  multiplier method may be used to award attorneys' fees.  *In re Bluetooth Headset Products*

4  *Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011) (citations omitted).  "Because the

5  benefit to the class is easily quantified in common-fund settlements, we have allowed courts

6  to award attorneys a percentage of the common fund in lieu of the often more time-

7  consuming task of calculating the lodestar."  *Id.*  "Applying this calculation method, courts

8  typically calculate 25% of the fund as the "benchmark" for a reasonable fee award, providing

9  adequate explanation in the record of any "special circumstances" justifying a departure."

10  *Id., citing Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.

11  1990).

12        In this case, Plaintiff's counsel intends to seek an award of 25% of the common fund

13  amount of $1,200,000 ($300,000), <u>inclusive</u> of Plaintiff's out of pocket costs, which totaled

14  $15,258.55.  (Coll Decl. ¶24.)  Thus, the amount Plaintiff's counsel anticipates seeking in

15  fees is $284,741.45, or 23.7% of the Settlement Amount.  Plaintiff's counsel's lodestar

16  surpasses this amount already, and will further exceed it by the time of the filing of a Motion

17  for Attorneys' Fees.  (*Id.*, ¶21-23.)  Furthermore, if the Court were inclined to use the

18  lodestar plus multiplier method to calculate attorneys' fees, which would be appropriate given

19  the special expertise of Plaintiffs counsel in class actions, and in particular wage class

20  actions, the use of such a multiplier would cause counsel's fees to be well in excess of the

21  $284,741.45 that counsel intends to seek as a fee award.

22  <u>Calculating the Pro Rata Distribution to Class Members</u>

23        In the event that the Court awards 25% of the Gross Settlement Amount in attorneys'

24  fees and costs ($300,000), and the enhancement payments requested ($10,000), the

25  remaining amount in the settlement fund would be $890,000.00.  Under the terms of the

26  settlement, this amount of funds left after payment of attorneys' fees is referred to as the "<u>Net</u>

27  <u>Settlement Amount</u>."

28

The proposed settlement calls for the Settlement Administrator to calculate individual settlement shares based on workweeks worked by each Class Member during the Class Period, defined to be the time period of April 10, 2016 through the date of the preliminary approval.  Individual Settlement Shares for that time period will be calculated by dividing the number of weeks a Settlement Class Member worked in the role of a casual driver by the number of weeks worked by all Settlement Class Members.  That amount will then be multiplied by the Net Settlement Fund.   Employee-side tax withholdings will be applied.  If a Class Member timely and validly submits a Request for Exclusion, his or her share will return to the Net Settlement Amount and will be distributed to the remaining Settlement Class Members (Exh. 1, ¶8.4) so that the amount actually distributed to the Settlement Class equals 100% of the Net Settlement Amount.  Thus, each individual class member will receive a proportionate amount of the settlement, based on the number of weeks (or portions thereof) that the worker worked.

The proposed class notice form will make estimates based on the possibility of the Court's awarding the full requested 25% in attorneys' fees and costs, and the requested enhancement awards.

Each class member has an opportunity to challenge the calculation of his or her individual claim amount.  (Exh. 1, ¶14.)

Enhancement Award

Defendant has also agreed to enhancement awards approved by the Court to the three class representatives, in an amount totaling $10,000.  Plaintiffs request that the Court award $5,000 to Frederick Schulz, $2,500 to Brandon Warren, and $2,500 to Matthew Warren, in addition to their share of the Net Settlement Amounts.[2]  Plaintiffs will make a motion for enhancement awards prior to final approval of the settlement.  The evidence will show that an incentive awards totaling $10,000 are reasonable in light of the work Plaintiffs put into

---

[2] In the event the Court awards less than $10,000 for a Class Representative Enhancement Payment, the difference between the amount awarded and $10,000 will be added to the amount of the Gross Fund Value.

this case, and the result obtained.  (*See* Coll Declaration, ¶26.)  In addition, the proposed

settlement includes a release for class representatives that is much broader than the release

for the Class, and releases all claims against Defendant.  (Exh. 1, ¶16.1.)

3.   Cy Pres

There is little chance of *cy pres* payments in this case, given the fact that checks will

be sent to class members, whose addresses are on file with Defendant.  However, the parties

have agreed that if any checks remain uncashed 180 days after issuance, such funds shall be

transmitted to a non-profit proposed by Plaintiffs, the California Association of Food Banks,

or such other non-profit organization as the Court may approve. (Exh. 1, ¶8.9.)

The selection of *cy pres* organization is a substantive issue, and is therefore governed

by federal law in cases like this one, where jurisdiction arises from the Class Action Fairness

Act.  *See All Plaintiffs v. All Defendants*, 645 F.3d 329 (5th Cir. 2011).  Under California law,

a *cy pres* recipient should be selected based on whether it "is useful in fulfilling the purposes

of the underlying cause of action." *In re Microsoft I-V Cases*, 135 Cal.App.4th 706, 722

(2006).  In this case, Class Counsel herein proposes that any *cy pres* monies to be distributed

under the proposed settlement should be distributed to the California Association of Food

Banks, a 501(c)(3) which provides food for California residents in need.  (Coll Decl. ¶25,

Exh. 2.)  Although food banks do not relate directly to employee rights, they nevertheless

relate to the interests of employees generally, as they provide food to individuals who may

have difficulty affording food due to wage disputes or pandemic-related layoffs.  In the

alternative, Class Counsel will accept any alternative 501(c)(3) organization, including Legal

Aid at Work, which is a 501(c)(3) organization serving the interests of workers.  (*Id.*, Exh. 3.)

4.   Release

In exchange for participation in the class fund, each class member will be deemed to

be bound by a release, which is limited to claims that were alleged or could have been

alleged in this action, and does not impact other rights of employees:

> Each member of the Settlement Class releases Released Parties from any and all
> claims, debts, liabilities, demands, obligations, penalties, premium pay, guarantees,

costs, expenses, attorney's fees, damages, actions or causes of action of whatever kind or nature, whether known or unknown, contingent or accrued, under any legal theory that were or could have been alleged in the operative complaint in the Action arising during the period from April 10, 2016, to the date on which the Court grants final approval of the settlement and related to work performed as Casual employees ("Released Claims"). The Released Claims include, but are not limited to, claims for any alleged failure to pay all wages due (including minimum wage and overtime wages), failure to pay for all hours worked (including off-the clock work), failure to provide meal and rest periods, short/late meal and rest periods, failure to relieve of all duties during meal and rest periods, failure to pay or underpayment of meal and rest break premiums, auto-deduction of meal periods, failure to timely pay final wages, and unfair business practices relating to the foregoing, up to and including the date of final approval by the Court.  The Released Claims include without limitation claims meeting the above definition(s) under any and all applicable statutes, including, but not limited to, any provision of the California Labor Code; Private Attorneys General Act (California Labor Code §§ 2698, et seq.); California Business & Professions Code §§ 17200 et seq.; any provision of the applicable California Industrial Welfare Commission Wage Orders, or the Fair Labor Standards Act, based on the facts or claims alleged in the Complaint(s) in the Action. This release shall apply to all claims arising at any point between April 10, 2016 and the date of Final Approval ("Release Period"). Released Claims do not include claims by Settlement Class Members arising out of work performed in any capacity other than as a "casual employee."

(Exh. 1, ¶16.)[3]

## III.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE TO THE CLASS.

The Court should approve the proposed notice to the Class.  Federal rules require that before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Where the settlement class is certified pursuant to Rule 23(b)(3), the notice must be the "best

---

[3] As set forth above, the release for the named class representatives is broader, providing: "In addition to the Released Claims, Plaintiffs shall each be bound by a compete and general release of all claims under any and all applicable federal and state laws and/or regulations as to Released Parties, and shall also be bound by a California Civil Code section 1542 release and waiver of all claims known and unknown, without exception, except as may be prohibited by law, such as claims for Workers' Compensation benefits. California Civil Code section 1542 reads as follows: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."  (Exh. 16.1.)

1   notice practicable under the circumstances, including individual notice to all members who

2   can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The notice

3   provided to class members should "clearly and concisely state in plain, easily understood

4   language" the nature of the action; the class definition; the class claims, issues, or defenses;

5   that the class member may appear through counsel; that the court will exclude from the class

6   any member who requests exclusion; the time and manner for requesting exclusion; and the

7   binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B). The

8   manner and form of notice proposed by the parties complies with these requirements. (*See*

9   Proposed Class Notice, attached as Exhibit A to Settlement Agreement.)

10       The manner of class notice is first class mail to each class member.  Defendant will

11  provide to the Settlement Administrator with the last known address and telephone number

12  of the class members.  (Settlement Stipulation, ¶10.1.)  Upon its receipt of the Class Data

13  List, the Settlement Administrator shall access the National Change of Address ("NCOA")

14  Database, and update the addresses contained therein.  (*Id.*, ¶10.2.) Within twenty-one (21)

15  calendar days of receipt of the Class Information set forth in Paragraph 10.1, the Settlement

16  Administrator will provide the Class Notice by bulk first class mail, forwarding requested, to

17  the Class Members at the addresses identified through the process described above.  (*Id.*,

18  ¶10.3.)

19       The Settlement Administrator will maintain a website relating to this Settlement,

20  including the Complaint, this Settlement Agreement, the Motion for Preliminary Approval,

21  and the Preliminary Approval Order.  (*Id.*, ¶10.4.)

22       The Class Notice, attached to the Settlement Stipulation as Exhibit A, meets the

23  requirements of Rule 23(c)(2)(B).  The Notice clearly and concisely states, in easily

24  understood language, the nature of the action; the class definition; and the class claims.  It

25  sets forth the class definition, and explains that Plaintiffs brought this action on behalf of "All

26  persons classified as 'casual employees' who worked as couriers for DHL Express (USA),

27  Inc. in the State of California from April 10, 2016 through [the date of preliminary

28  approval]."  (Exh. A to Exh. 1 [Class Notice], p. 1.)  It also details the causes of action in the

Complaint and provides a website to review the complaint itself.  (*Id.*, p. 1.)  The Class Notice also explains the opportunity to opt out (*id.*, pp. 3-4) or object to the settlement (*id.*, p. 4).   Finally, the Class Notice sets forth the binding effect of a class judgment on class members, through a description of the release, which releases all claims that were alleged in the lawsuit.  (*Id.*, p.3.)

For the foregoing reasons, the Court should approve the method and content of the class notice in this matter.

## IV.     THE COURT SHOULD SET A FINAL FAIRNESS HEARING DATE FOR JUNE 30, 2022.

In the event that the Court preliminarily approves the parties' proposed settlement on February 3, 2022, Plaintiff requests that the Court set the hearing date for final approval for June 30, 2022.  The following is Plaintiffs' proposed approval schedule:

| Event | Added Days | Anticipated Date |
| --- | --- | --- |
| Preliminary Approval Order | | 2/3/2022 |
| Defendant to provide Settlement Administrator with class member and workweek information | +21 days | 2/24/2022 |
| Claims Administrator to mail class notice | +21 days | 3/17/2022 |
| Opt-Out and Objection Deadline | +45 days | 5/2/2022 |
| Notice from Defendant of Withdrawal if 5% or more class members opt out | +21 days | 5/23/2022 |
| Motion for Final Approval Filed | +3 days | 5/26/2022 |
| **Motion for Final Approval Heard** | **+35 days** | **6/30/2022** |
| Final Effective Date (if approval granted on date of hearing and no appeal is filed) | +60 days | 8/29/2022 |
| Settlement Funded | +21 days | 9/19/2022 |
| Settlement Administrator to make payments | +14 days | 10/3/2022 |

Motion for Preliminary Approval                                          Case No. 3:20-cv-04490-RS

If the foregoing schedule meets with the Court's approval, an appropriate date for the hearing on final approval would be <u>June 30, 2022</u>.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the accompanying Proposed Order granting preliminary approval of the proposed settlement, conditionally certifying the settlement class, appointing Plaintiff as class representative and his attorney as class counsel, directing dissemination of the class notice, and setting a hearing for the purpose of deciding whether to grant final approval of the settlement.

Dated:  December 30, 2021

Respectfully submitted,

QUADRA & COLL, LLP

By:  _____/s/ Rebecca Coll_____
Rebecca Coll

Motion for Preliminary Approval                    Case No. 3:20-cv-04490-RS